OPINION OF THE COURT
John J. Connell, J.
*228 The trial of this capital case is scheduled to begin on September 1, 1998. On August 19, 1998 the Court of Appeals issued an order granting permission to the People to appeal an order of the Appellate Division, Fourth Department, entered April 29, 1998 which affirmed an August 25, 1997 order of this court dismissing two additional counts of murder in the first degree. On August 20, 1998, the prosecutor requested a postponement of the September trial date until such time as the Court of Appeals rules on the issues encompassed by the People’s appeal.
Since the People’s application is one addressed to the sound discretion of the court, it is appropriate to discuss the factors forming the basis of this court’s decision.
The People argue that to deny their request would frustrate State legislative intent to resolve these appellate issues before the trial in this matter. The legislative intent could not be clearer, however. The New York State Legislature chose not to give the People the opportunity to request a stay during the pendency of this type of appeal. In fact, the Legislature authorized such a stay only when the matter is being considered by an appellate court other than the Court of Appeals (CPL 460.50, 460.60).
The defendant has been in custody since his arrest on these and related charges on November 7, 1996. He was indicted by the Grand Jury on December 19, 1996. With the exception of Sandoval /Molineux hearings, all pretrial hearings were completed in 1997. The case was then scheduled for trial beginning November 17, 1997.
After examining the Grand Jury minutes pursuant to the defendant’s motion under CPL article 210, this court dismissed counts 11 ánd 12 on the grounds that the evidence and law presented to the Grand Jury were insufficient to support those murder in the first degree charges, the so-called “serial killer” counts. The People thereafter appealed that decision, which stayed the commencement of the original November 17, 1997 trial date pursuant to CPL 460.40 (2).
During the pendency of that appeal to the Appellate Division, several conferences were held between this court and counsel to discuss and consider the various postures the case could take, depending on the decision of the Appellate Division. It was made clear to all parties that if there was an affirmance by the Appellate Division, the surviving counts in the indictment would proceed to trial within a reasonable time thereafter.
*229 On April 29, 1998, the Appellate Division, Fourth Department, unanimously affirmed this court’s decision. On May 6, 1998, a conference was held with court and counsel to discuss possible trial dates and a general outline for jury selection. September 8, 1998 was selected as a trial date satisfactory to all parties. The matter was then calendared for May 13 to place the September 8 date on the record.
Especially troubling is the People’s present position that as a result of that May 13 court appearance, it has been their belief that this court committed to postponing the trial pending a final determination by the Court of Appeals. This position is not only at odds with the transcript of that appearance, it also ignores the history of chamber conferences, court appearances and written and verbal communications of all parties in this case. The following is the relevant portion of the May 13 exchange between this court and Mr. Green, the prosecutor:
“the court: Has there been any request for leave to appeal made yet by your office?
“mb. green: I believe the letter is being sent today, your Honor.
“the court: Okay.
“me. green: We are going to be seeking leave.
“the court: All right. This September 8 date, then, would obviously be subject to whatever action the Court of Appeals may take in your application or any other decisions that may be coming.”
Obviously, the “action” taken by the Court of Appeals was to grant leave to appeal without a stay. As the transcript reveals, this court neither stated nor inferred that it would be postponing the trial in the event that the Court of Appeals granted leave to appeal; nor does the May 13 transcript support the prosecutor’s claim that were the Court of Appeals to grant leave, it was the People’s position that the case could not be tried until the decision was rendered on that issue. The transcript discloses that he never made such a statement nor anything remotely resembling it.
In fact, immediately following that appearance, this court met with counsel in chambers and again emphasized that the case would proceed to trial on September 8. Neither side objected to that date. Both sides indicated their readiness for trial. Neither side requested a postponement of the trial.
It is noteworthy that throughout the numerous in-court and chamber contacts with counsel in this case, no one requested a *230 postponement or indicated a future intention to request this court to stay or postpone the trial pending action by the Court of Appeals or pending any other future contingency.
Both counsel concede this court’s repeated requests to be notified if any stay applications were contemplated that would affect the September trial date in this matter. Even when the trial date was changed from September 8 to August 31 and then to September 1, there was no request for postponement or indication that either side was unprepared for trial.
At virtually every chambers conference, as well as several of the court appearances, this court stressed to the parties that it would appreciate the professional courtesy of being notified about any contemplated stay applications to any court and to be informed about any other issues that could delay the trial. These requests were, in part, based on this court’s belief that there was no statutory basis for a stay application before the Court of Appeals. Accordingly, this court sought to be informed of any extraordinary stay application that might be contemplated by the People.
In spite of requests to counsel to supply this court with all written transmittals of leave applications, stay applications, briefs and any papers filed with any other court concerning this case, to date I have received none. I have, until just recently, not been told of contacts with the Court of Appeals until well after those contacts have been made and only when in court or chambers concerning appearances unrelated to those appellate contacts.
In light of the enormous burden a capital trial will place on support personnel, this court has met with representatives of the court reporters, court security, Commissioner of Jurors, and Court Clerk’s Office in efforts to set procedures for jury selection and trial. Counsel have been informed of these meetings and given opportunity for input. Before and after each of these meetings, I have emphasized to counsel the enormity of the work awaiting all of us in summoning approximately 2,000 jurors for the September 1 voir dire. The Commissioner of Jurors, for example, has informed this court that as of September 1,1998, in excess of $20,000 of her budget will have been expended by contacting the 2,000 jurors, arranging for the appearance of 600 in a two-day period, and the completion of their 30-page questionnaires.
I also informed counsel that because of the number of tasks this court needed to attend to before jurors could be brought in, no new cases were being assigned to me. This not only put *231 an extra burden on my judicial colleagues regarding additional case assignments, but it also meant that cases ready for trial on my calendar would be assigned to local and visiting Judges.
Six hundred and fifty 30-page questionnaires were prepared in anticipation of the jurors arriving on September 1 and 2, 1998. Before juror summonses were sent out, this court again contacted counsel and inquired as to any possible stay applications or delays of the trial that they could foresee. Neither side indicated a stay was contemplated or sought. The transcript of June 24, 1998 is particularly illuminating on this point:
“the court: I am going ahead and I am assuming that all of you are with the understanding that the trial will begin with the jurors coming in for the questionnaires August 31st, and that the screening by the attorneys of those questionnaires would begin September 8.
“So if there is any scheduling issue, I would appreciate being informed of it as soon as possible. I can’t foresee how this would occur at this point, but if there are any requests of this Court or of any other Court for a Stay involved in this case, I would appreciate the courtesy of knowing about that. I don’t anticipate that. If there is any reason this August 31st date is not possible — I don’t want to say possible. I know it is. If there is some glitch you feel based on the conference we have had or the communications that I have sent you so far that I have overlooked, I ask you to let me know as soon as possible. The summonses for the potential jurors to insure there are 600 coming in, they are probably going to send out about 1,500. They are probably going to be sent out in July. So I would think that by the time we meet again on July 10 — excuse me; July 9 for the Ventimiglia, Sandoval Hearing those would pretty well be prepared and ready to send out [sic]” (emphasis added).
The prosecutor replied that he was still awaiting news concerning the application for leave to appeal, but again made no request for a stay or a postponement. Defense counsel, however, did indicate that they were considering a stay application on an unrelated appeal issue. Yet even this did not evoke a similar statement of intent from the prosecutor. Once again this court asked to be copied on any appellate requests that would be made.
A “stay” is not the same as a grant of “leave to appeal”. The former is a postponement of the proceedings; the latter provides an opportunity for appellate review of pertinent legal issues associated with the case. They are not interchangeable concepts. Clearly, a stay does not automatically accompany an *232 order granting leave to appeal. Because of that distinction, on August 11, 1998 this court sent a letter to the attorneys in this matter which, in pertinent part, stated the following: “As the trial date nears and the realities of the logistical problems attendant to that trial loom before us, 1 would like to remind all of you, as I have in chambers and occasionally on the record, that I would appreciate being kept up to date on any formal or informal requests made of Appellate Courts concerning leave and tor stay applications. I ask for such information to avoid spinning wheels in resolving the myriad of problems that face not only you as the attorneys in the case and myself as the presiding judge, but also all of the various support staff that will have amplified roles during jury selection and the trial of this matter” (emphasis added).
On August 14 the People restated their intention to seek leave to the Court of Appeals and referenced a July 30 telephone call to Chief Judge Kaye’s chambers which apparently pointed out the September trial date for this case.
On August 19 the prosecutor called my office to say the Court of Appeals granted leave to appeal. He then announced his position that the trial was “stayed as a matter of law”.
This trial has been scheduled with a day certain for months. The People have never announced anything but their readiness for trial in this matter. They have never in any way objected to the initial trial date of September 8, nor the subsequent dates of August 31 and September 1. Prior to August 20, 1998, they had not asked for a postponement of this trial in spite of countless invitations by this court to do so. Instead they chose, for reasons unclear to this court, to delay such a request until just 12 days before trial.
At the conclusion of their August 20 argument, the prosecutor stated that if this court denied his request to postpone the trial, his office would seek a stay from the Court of Appeals. Truly surprising is that position, since only moments before the prosecutor acknowledged in chambers that he had no statutory basis for such an application.
The fact that this case would be tried in September is not news to the People. The possible ramifications of success or failure in the Court of Appeals is not news to the People. The possible effect that the delay of the case would have on all parties concerned, including witnesses, victims, families of victims, the defendant and to a lesser extent court personnel, is not news to the People. To be sure, those are the very reasons this court continually and persistently kept the issue of a stay or *233 postponement of this trial in the forefront of its contact with counsel in this case. Not even the possible future double jeopardy arguments that may be advanced by the defense is news to the People. That issue and many more have been part of this case for months.
On August 24, 1998 the Court of Appeals, again without granting a stay of the trial, informed the parties that oral argument will be heard on November 17, 1998. Their decision would presumably be issued between late December and mid-January. If a postponement was granted at this late date, the logistics attendant to this trial, assuming counsel were not engaged in other capital trials at the time, would bring the start date to spring 1999 at the earliest.
A trial court has an inherent power to manage its own calendar, balancing the interests of all those concerned, including the community. To endorse the view that the People believed this trial would be postponed if leave to appeal was granted would be disingenuous at best. All parties were aware of the time line involved, and had an active, ongoing and participatory hand in drafting that time line. At this stage of the proceedings, on the very eve of jury selection, this trial will not be postponed.
Accordingly, the People’s application for a postponement of the September 1, 1998 trial date is hereby denied.
In light of the repeated unanswered requests for copies of leave applications, briefs and other paperwork related to the pending appeal in this case, this court hereby orders the parties to file copies with this court of those documents forthwith.
This court further orders that in the event that either side makes application to any court for a stay or postponement of this trial, that a full, complete and certified copy of this decision be submitted with their papers to that court for its information and review.